IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY | |
| **Plaintiff,** | |
| v. | 1:06-cv-00695-WSD |
| SCHOENTHAL FAMILY, LLC and LIBERTY ONE FUNDING TRUST, | |
| **Defendants.** | |

## OPINION AND ORDER

This matter is before the Court on Defendants Schoenthal Family, Inc. and Liberty One Funding Trust's ("Defendants") Motion for Leave to File Motion to Amend and Motion to Amend Counterclaims [67].

This dispute presents troubling issues involving practices in the insurance and investment industries. The litigation concerns a $7 million insurance policy (the "Policy") issued in 2004 by American General Life Insurance Company ("Plaintiff"), insuring the life of Samuel Schoenthal ("Schoenthal"). On July 14, 2005, Schoenthal died. On August 2, 2005, Liberty One Funding Trust, assignee of the benefits of the policy on Schoenthal's life, filed a claim for the Policy amount. Plaintiff denied the claim, alleging that Schoenthal had misrepresented

his income and net worth on the policy application and in a telephone interview.[1]

On March 24, 2006, Plaintiff filed a complaint seeking a declaratory judgment that the Policy is void. Defendants counterclaimed for breach of contract.

On June 8, 2006, the Court entered a Scheduling Order in this case. That Order set the time limit for amending pleadings. The parties agree that the Court-ordered deadline for amending pleadings expired well before February 12, 2007, the date on which Defendants filed the present motion.

Defendants seek leave to file a motion to amend their counterclaims to include a counterclaim under Georgia law for bad-faith claim denial of insurance

---

[1] Plaintiff alleges that Schoenthal claimed a net worth of more than $10 million and an income of more than $150,000 per year. Schoenthal in fact had a net worth of less than $200,000 and an insignificant income. Plaintiff claims this "life insurance" transaction is a arbitraged arrangement involving the Policy and a corresponding annuity, in which Schoenthal's life and health were represented in various ways to create a financial situation profitable for all–or nearly all–involved. It appears that Liberty One may have loaned Schoenthal the funds for the life insurance and annuity premiums in return for assignation of the insurance benefits. Schoenthal may have received an income stream from the annuity. When Schoenthal died, Liberty One appears to have anticipated receiving the life insurance benefits to repay the loan and may also have expected to retain the remainder of the payment under the Policy as "profit" for its role in the arrangement.

The parties thus far have given the Court the definite impression that Schoenthal himself was a more or less passive participant in this arrangement. The parties appear to agree that various financial information provided to Plaintiff about Schoenthal's income and net worth was grossly misrepresented.

benefits.  Defendants argue that they filed this motion as soon as they discovered a factual basis supporting the proposed counterclaim, and that they could not have filed it sooner.  Defendants claim the necessary evidentiary basis for the proposed counterclaim only came to light during depositions taken in late January and February of 2007.  Defendants' claim this deposition testimony provided the first evidence that Plaintiff does not have a company policy, custom, or practice of denying claims based on misrepresentations of financial condition, and that Plaintiff routinely grants claims for policies whose applications contain financial misrepresentations or no financial representations at all.

     The Court first determines whether the scheduling order bars the late filing of the motion.  See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (noting that courts evaluating motions to amend in these circumstances should determine whether to alter the scheduling order under Rule 16 prior to determining whether the amendment is proper under Rule 15).  To allow Defendants to amend their counterclaims, the Court would have  to modify the June 8th Scheduling Order by allowing an out-of-time filing of the amendment motion.  "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge. . ."  Fed. R. Civ. P. 16(b).  The good cause

standard "preludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking extension." Id. at 1418 (quotation ommitted).  The good cause standard is met when, in the exercise of due diligence, the party seeking amendment does not discover the facts justifying the amendment until after the amendment deadline.  See Datastrip Intern., Ltd. v. Intacta Technologies, Inc., 253 F. Supp. 2d 1308, 1317-18 (N.D. Ga. 2003).

The Court reluctantly concludes that good cause exists to modify the scheduling order.  While it is a close question, the Court concludes that Defendants pursued discovery in a sufficiently diligent manner.  Defendants allege that they did not discover facts supporting the proposed counterclaim until deposition testimony in late January and early February of 2007.  Prior to these depositions, Defendants allege that facts to support the bad faith claim were not available to them.

Plaintiff argues that Defendants' claim of diligence is disingenuous, because Defendants threatened to file counterclaims for bad faith as early as May of 2006.  That Defendants threatened such claims, however, does not mean that they could have filed them. Federal Rule of Civil Procedure 11(b)(3) provides that parties can be sanctioned for filing claims unless "the allegations and other factual contentions

have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . ." While the issue of bad faith was raised significantly earlier than the filing of the present motion, including at the October 6, 2006, discovery hearing, the Court accepts Defendants' representation that it believes it did not have a sufficient evidentiary predicate to assert a bad faith claim until February of 2007, late in the discovery period.

The Court next determines whether the amendment should be allowed under Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Defendants filed this Motion to Amend well after the filing of responsive pleadings, thus leave of the Court is required. Generally, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject to relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v.

Davis, 371 U.S. 178, 182 (1962). A court should not deny a motion for leave to amend unless it has a "substantial reason" to do so, such as "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment." Id.; see also Amick v. BM & KM, Inc., 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003). Leave to amend may be denied for futility "when the complaint as amended is still subject to dismissal." Hall v. United Ins. Co. Of Am., 367 F.3d 1255, 1263 (11th Cir. 2004).

Plaintiff claims that Defendants' proposed bad faith claim would be futile. Under Georgia law, a bad faith denial of claim occurs when: (1) there is a loss covered by an insurance policy; (2) the insurer refuses to pay within 60 days of a demand; and (3) the refusal was in bad faith. O.C.G.A. § 33-4-6. "Bad faith" is "any frivolous and unfounded refusal in law or in fact to pay according to the terms of the policy." King v. Atlanta Cas. Ins. Co., 631 S.E. 2d 786, 788 (Ga. Ct. App. 2006). The existence of bad faith is a jury question, Stegall v. Guardian Life Ins. Co. of America, 320 S.E.2d 575, 576 (Ga. Ct. App. 1984), and ordinarily "should not be judged on preliminary proofs . . . but on the case made at trial." Forbus v.

Allstate Ins. Co., 603 F. Supp 113, 116 (N.D. Ga. 1984) (quotation and citation omitted).

Plaintiff claims that it refused to pay the claim on the Policy based on material misrepresentations in the Policy application, specifically misstatements of Schoenthal's financial situation. The Policy expressly provides that material misrepresentations can result in a denial of claims. As a general matter, "an incorrect statement in an insurance application will not prevent recovery under the policy unless the insurer, with knowledge of the true facts, would not in good faith have issued the policy . . . in as large an amount or at the given rate . . ." Case v. RGA Ins. Servs., 521 S.E. 2d 32, 33-34 (Ga. Ct. App. 1999). Defendants contend that Plaintiff does not consider financial condition when processing claims under similar policies, and thus such misstatements in the Policy are not material. See, e.g., Lively v. Southern Heritage Ins. Co., 568 S.E. 2d 98, 100 (Ga. Ct. App. 2002) (holding that the materiality of false statements about prior losses and insurance history in an insurance application presented a jury question where the insurer did not have "any bright-line company policies stating that coverage is denied [if the misrepresented facts had been accurately presented]"); Case, 521 S.E. 2d at 34 (finding genuine issues of fact about the materiality of omissions in a policy

application where evidence existed that the insurer "placed no reliance" on the application).

Plaintiff argues that it does consider financial information in assessing policy risks, and that it has denied claims under other policies on financial grounds. Plaintiff essentially argues that, in light of all the evidence, Defendants are likely to fall "well short" of proving their proposed bad faith counterclaim. The Court does not now determine the bad faith counterclaim on the merits, and, although the claim appears very thin, the Court looks only to it is viable, that is, whether it states the elements of a claim upon which relief could be granted. See, Forbus, 603 F. Supp at 116. Whether a claim is viable is different from whether it will be successful. Defendants state, albeit barely, a facially adequate counterclaim for bad faith. They allege a policy, a refusal to pay within the required time period, and bad faith on the grounds that Plaintiff refused the claim based on a misrepresentation that it knew to be immaterial. Although, as Plaintiff notes, Defendants ultimately may not be able to meet their evidentiary burden on this counterclaim, at this point in the litigation the claim is sufficient to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6). Defendants' proposed bad faith counterclaim is therefore not futile under Rule 15.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Leave to File Motion to Amend and Motion to Amend Counterclaims [67] is **GRANTED**.

**SO ORDERED** this 15th day of June, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE